IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TYLOR A. FORSYTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-CV-00721-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

**I.     Introduction**

The plaintiff, Tylor A. Forsyth, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). Mr. Forsyth timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Forsyth was twenty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a ninth grade education, as well as experience working in the following jobs: dishwasher, cook helper, and plumber helper. (Tr. at 151-54, 180.) Mr. Forsyth claims that he became disabled on

February 24, 2011, due to bipolar disorder, explosive anger, major depression, back pain, and lung problems. (Tr. at 342.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v.*

*Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See Id.* §§ 404.1520(e), 416.920(e).  The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See Id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Mr. Forsyth has not engaged in SGA since the alleged onset of his disability. (Tr. at 123.) According to the ALJ, Plaintiff's borderline intellectual functioning; bipolar I disorder, recent episode depressed; generalized anxiety disorder; personality disorder (anti-social, explosive, paranoid, borderline); and polysubstance abuse in recent remission; status post spontaneous pneumothorax (right and left side); learning disability; and status post right upper lobectomy are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 131.) The ALJ found that the plaintiff has the RFC to perform medium work, as defined in 20 CFR § 46.967(c), with the following limitations:

>He could never climb ladders or scaffolds. He should never be exposed to dangerous machinery, dangerous tools or hazardous process or unprotected heights or operate commercial motor vehicles. He can be occasionally exposed to humidity, wetness, atmospheric conditions, weather, extreme heat or cold. He can be exposed to moderate noise levels. He cannot have any exposure to dust, flumes, gases or other pulmonary irritants. He could only remember short simple instructions but would be unable to deal with detailed or complex instructions. He could do simple routine repetitive tasks but is unable to do detailed or complex tasks. He should have no more than occasional contact with the general public, co-workers and frequent interaction with supervisors and he would be able to accept constructive non-confrontational criticism, work in small group settings and be able to accept changes in the work place setting if introduced gradually and infrequently. He would be unable to perform assembly line work with production rate pace but could perform goal-oriented work. Any time off task by the claimant could be accommodated by normal breaks.

(Tr. at 133.)

According to the ALJ, the plaintiff is unable to perform his past relevant work; he is a "younger individual aged 18–49," and he has a limited education and is able to communicate in English, as those terms are defined in the regulations. (Tr. at 135–36.) The ALJ determined that the plaintiff's "transferability of job skills is not material to the determination of disability." (Tr. at 136.) Because the plaintiff does not have the RFC to perform the full range of medium work, the ALJ enlisted a vocational expert ("VE") and used the Medical Vocational Rules as a guideline for finding that the plaintiff would still be able to perform the requirements of representative occupations such as: laundry worker, grocery bagger, and day

5

worker. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 1, 2011, the date the application was filed." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).   This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III.   Discussion

Plaintiff alleges that the ALJ erred in denying him disability for largely three reasons. Plaintiff claims that the ALJ did not fully consider the longitudinal evidence in his case, including Plaintiff's mental health treatment prior to the onset date of the alleged disability. Further, Plaintiff claims that the ALJ erred by not giving proper weight to Dr. Storjohann, an evaluating psychologist, and by giving too much weight to Dr. Summerlin, an evaluating psychologist.

### A. Consideration of Longitudinal Evidence in RFC Determination

Plaintiff first contends that the ALJ erred by failing to consider the "longitudinal evidence" that would support his claim for disability, specifically, mental health treatment notes from Calhoun-Cleburne Mental Health Center from 2008 to 2011. As an initial matter, Plaintiff's alleged onset date was February 24, 2011, and his application date was December 1, 2011. (Tr. at 121, 314-23). Supplemental Security Income is not payable prior to the month following the month in which the application was filed, so the relevant time period at issue in this case began in January 2012, the month after Plaintiff filed his application. (Tr. at 121, 137). *See* 20 C.F.R. § 416.335. Thus, the most relevant evidence is from the onset date forward. Evidence relating to Plaintiff's alleged disability before the onset date of February 24, 2011 does not directly tend to prove disability for the relevant time period. Accordingly, a proper longitudinal view of the evidence in this case would focus on the onset date forward, using prior history evidence insofar as it is useful to prove disability beginning at the onset date. Moreover, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" provided ALJ properly considered the claimant's condition as a whole. *Dyer*, 395 F.3d at 1211.

In any event, the ALJ did consider the Calhoun-Cleburne records, noting that the records from Calhoun-Cleburne prior to the alleged onset date showed that Plaintiff had mental health treatment for bipolar disorder, most recent episode depressed, at the Calhoun-Cleburne Mental Health Center. (Tr. at 126, 428). The ALJ's remaining analysis appropriately focused on the medical evidence pertaining to the period beginning at the onset date. (Tr. at 126-131). The ALJ noted that from May 2011 through September 2011, Plaintiff had counseling sessions at Calhoun-Cleburne and that, in September 2011, Plaintiff was out of medication. (Tr. at 126, 441-511). He had been recently prescribed medications and had not had the opportunity to have the prescription filled, so the ALJ determined that there was a medical noncompliance issue. (Tr. at 126). Jeter Maurice, M.D., Plaintiff's psychiatrist at Calhoun-Cleburne, diagnosed bipolar disorder, most recent episode depressed moderate, intermittent explosive disorder, and antisocial disorder—all of which the ALJ assessed as severe impairments. (Tr. at 123, 126, 449). Moreover, the ALJ noted that Plaintiff had a global assessment functioning ("GAF") of 55, denoting only moderate symptoms or difficulties according to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV). (Tr. at 126, 449). Plaintiff's request for Xanax was denied given his recent drug history. (Tr. at 127, 449). Psychiatric notes also indicated Plaintiff had a history of abusing cocaine

and methamphetamine. (Tr. 127, 448). Plaintiff's psychiatrist indicated that Plaintiff did not exhibit evidence that he intended to harm himself or anyone else, noted that Plaintiff described persistent irritability and insomnia, and adjusted Plaintiff's medication. (Tr. at 127, 449). Plaintiff discontinued mental health treatment after September 2011, resumed mental health treatment in July 2012, and continued treatment in August 2012. (Tr. at 127, 708, 774-775). In October 2012, during a counseling session with his therapist at Calhoun-Cleburne, the therapist indicated that Plaintiff had made fair progress, and reported only minor symptoms such as irritability, low mood, and difficulty sleeping, and the therapist encouraged Plaintiff to continue attending Rehabilitative Day Program as scheduled and to take all medications as directed. (Tr.at 127, 714-715). Plaintiff was noted as appropriate in groups and polite to staff and peers. (Tr. at 127, 714-715). Plaintiff was prompt and attentive in groups, and his participation was good. (Tr. at 127, 714-715). His mood appeared stable and fair. (Tr. at 127, 714-715). Plaintiff was absent for his mental health therapy session in November 2012. (Tr. at 127, 766-767). In sum, the ALJ's decision indicates that he discussed the records from Calhoun-Cleburne for the relevant time period in detail.

### B. Weight Given to Consultative Examiner's Diagnosis

Plaintiff further contends that the ALJ should have given more weight to the opinions of Robert Storjohann, Ph.D. and less weight to the opinions of Robert Summerlin, Ph.D. To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. § 404.1527(c). *See Davis v. Comm'r of Social Sec.*, 449 F. App'x 828, 832 (11th Cir. 2011) (stating that the ALJ will give more weight to the medical opinions that are supported by medical signs and findings and are consistent with overall "record as a whole"). Within the classification of acceptable medical sources are the following different types of sources which are entitled to different weights of opinions: 1) a treating source, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician psychologist, or other acceptable source who has not examined you but provides a medical or other

opinion in your case…includ[ing] State agency medical and psychological consultants….” 20 C.F.R. § 404.1502. The regulations and case law set forth a general preference for treating sources' opinions over those of non-treating sources, and non-treating sources over non-examining sources. *See* 20 C.F.R. § 404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). However, an ALJ "may reject the medical opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-419 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). The court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e), 416.927(d).

   **1. Dr. Storjohann**

The ALJ gave partial weight to the opinions of Dr. Storjohann. (Tr. at 130). On examination, Dr. Storjohann diagnosed the plaintiff with the following: BiPolar I Disorder, Generalized Anxiety Disorder, Social Phobia, Borderline Intellectual Functioning, Antisocial Personality Disorder, Paranoid Personality Disorder, and

Borderline Personality Disorder. (Tr. at 785.) He assigned him a GAF score of 40. (Tr. at 128). He estimated the plaintiff's intelligence in the "low range or lower," and concluded that the plaintiff would have marked deficits in his ability to understand, carry out, and remember instructions in a work setting and extreme deficits in response to supervision, coworkers, and work pressures. (Tr. at 782-783.)  Dr. Storjohann also noted marked limitations and extreme marked limitations in several functional areas. (Tr. at 787-789.)

The Plaintiff's primary argument is that Dr. Storjohann's opinions were more consistent with the evidence in this case, particularly the Cleburne-Calhoun Medical Center. Specifically, Plaintiff argues that Dr. Storjohann's assigning of a GAF of 40 is more consistent with the Cleburne-Calhoun GAF of 55. Those scores are fifteen points apart; whereas, the GAF scores assigned by Dr. Summerlin—60 and 65—are only five and ten points apart. (Tr. at 136, 449, 581, 785). Even if Dr. Storjohann's GAF scores were more consistent with the record, the Commissioner has specifically declined to endorse the GAF scale for use in disability programs because it "does not have a direct correlation to the severity requirements in our mental disorders listings." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50, 764-65 (Aug. 21, 2000); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 688, 690 (11th Cir.

2013); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005). While GAF scores may be indicative of a claimant's alleged level of functioning on the date of treatment, the ALJ assigned the scores little weight when considering the cumulative evidence of record regarding Plaintiff's overall mental health condition (Tr. 126-127, 130). An opinion concerning a GAF, even if required to be accepted as valid (which it is not) would not translate into a specific finding in regard to functional limitations. *See Ward v. Astrue*, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008). Moreover, after a 12-year revision process, the DSM-5 Task Force "recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* DSM-5, 16 (5th ed. 2013). Accordingly, the ALJ properly gave little weight to the GAF score assigned by Dr. Storjohann and instead relied on "cumulative evidence of record regarding the claimant's overall mental health condition." (Tr. at 30).

The Plaintiff further argued that the weight of the evidence was generally more consistent with Dr. Storjohann's opinion. The ALJ, however, provided substantial evidence supporting his decision to give partial weight to his opinions. Specifically, the ALJ gave consideration to the IQ score assigned by Dr. Storjohann, but he considered those scores with prior IQ scores and in the context

of Plaintiff's adaptive functioning. (Tr. at 129). In considering the Plaintiff's adaptive functioning, the ALJ looked at function reports, personal testimony, and other evidence indicating the Plaintiff's ability to maintain employment in the past at unskilled or semiskilled jobs, to take care of himself, to take care of a dog, to prepare simple meals, to do light household chores, to drive, and to engage in leisure activities like drawing or watching television. (Tr. at 129). The ALJ additionally noted the Plaintiff's low academic performance. (Tr. at 129). Overall, the ALJ used this evidence to determine that the Plaintiff had high adaptive functioning. (Tr. at 130). The ALJ found his high adaptive functioning consistent with the higher IQ range assigned by Dr. Storjohann, if not higher. Moreover, the ALJ did not reject Dr. Strojohann's diagnoses, as the ALJ found that the Plaintiff did have severe impairments. (Tr. . . .). However, as the ALJ noted, the weight of the evidence was against Dr. Storjohann's opinion regarding Plaintiff's functional limitations. (Tr. 128–129). Given the personal testimony, function reports, and other evidence indicating a high adaptive functioning, the ALJ's decision to assign partial weight to Dr. Storjohann's opinion was supported by substantial evidence.

### 2. Dr. Summerlin

Further, the Plaintiff essentially argues that the ALJ improperly gave partial weight to Dr. Summerlin's opinions. Dr. Summerlin evaluated Plaintiff on two

different occasions. (Tr. at 434, 580). After both evaluations, Dr. Summerlin confirmed the existence of a Mood disorder, Not Otherwise Specified. (Tr. at 436, 581). He assigned the Plaintiff GAF scores of 60 and 65. (Tr. at 436, 581). Plaintiff's argument against these opinions is two-fold. First, Plaintiff argues that Dr. Summerlin's opinions carry less weight because he did not conduct any psychometric testing. However, the ALJ did find that Dr. Summerlin conducted psychometric testing. (Tr. at 129). Second, the Plaintiff argues that Dr. Summerlin's opinion was against the weight of the evidence. Specifically, the Plaintiff indicates that Dr. Summerlin's evaluation does not indicate bipolar disorder. Although this is true, the ALJ did find that the Plaintiff suffered from bipolar disorder and thus did not rely on Dr. Summerlin's non-diagnosis. (Tr. at 123). Moreover, the ALJ did not rigidly adopt Dr. Summerlin's opinions as dispositive of Plaintiff's impairments. Instead, he only gave Dr. Summerlin's opinions regarding Plaintiff's intellectual functioning partial weight. (Tr. at 130). Dr. Summerlin observed that Plaintiff's "mental status was essentially unremarkable." (Tr. at 128). He further observed that Plaintiff was

> oriented in regard to person, place, time, and circumstance. There were no abnormalities noted in his speech pattern. Attention, concentration, and memory functioning were well within normal limits. His abstract thinking ability, fund of general information, computational skills, and vocabulary remain consistent with his educational background and estimated intellectual quotient.

(Tr. at 128). These observations are consistent with observations from Cleburn-Calhoun where Plaintiff "was noted as appropriate in groups and polite to staff and peers. [Plaintiff] was prompt and attentive in groups and participation was good. His mood appeared stable and fair." (Tr. at 127). Accordingly, the ALJ's decision to give Dr. Summerlin's opinions partial weight is supported by evidence in the record.

## IV. Conclusion

Upon review of the administrative record and considering all of Mr. Forsyth's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on August 26, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182185